**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alcon Laboratories, Inc., | Case No. |
| Plaintiff, | |
| v. | |
| Allied Vision Group, Inc. and National Lens LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT

Plaintiff Alcon Laboratories, Inc. ("Alcon") brings this action against Defendants Allied Vision Group, Inc. ("AVG") and National Lens LLC ("National Lens") (collectively, "Defendants") and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     Defendants are subject to personal jurisdiction in this State, because Defendants conduct business within this State, including shipments to individuals within this State of the products at issue in this case, and such conduct has caused injury to Alcon in this State.  Because Defendants are subject to personal jurisdiction in this State, they are subject to personal jurisdiction in this District.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) in that a substantial part of the events giving rise to the claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

ny-1311243

## PARTIES

4.      Plaintiff Alcon, a division of Novartis AG, is a corporation organized and existing under the laws of the State of Delaware, having its corporate offices and principal place of business at 6201 South Freeway, Fort Worth, Texas  76134.

5.      On information and belief, Defendant Allied Vision Group, Inc. is a corporation wholly owned by New York-based Hammond, Kennedy, Whitney & Company, Inc., and is organized and existing under the laws of the State of Florida, having its principal place of business at 5350 N.W. 35th Avenue, Fort Lauderdale, Florida  33309.

6.      On information and belief, Defendant National Lens LLC is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business at 5350 N.W. 35th Avenue, Ft. Lauderdale, Florida  33309.

7.      On information and belief, Defendants Allied Vision Group, Inc. and National Lens LLC operate out of the same location and are, or have historically been, managed by the same individuals and entities.  On information and belief, Robert Tardell is the Chief Executive Officer of Allied Vision Group, Inc. and the President and managing member of National Lens LLC.

## STATEMENT OF FACTS

### A.    Alcon's Business

8.      Alcon was founded in 1947 in Fort Worth, Texas as a small pharmacy focused on sterile ophthalmic products.  It has developed into a world-renowned developer and manufacturer of contact lenses, prescription eye care products, surgical devices for eye care practitioners, and over-the-counter eye care products.  Its mission is to provide innovative products that enhance quality of life by helping people see better.  Alcon's focus is on patients, as seen in its advanced

2

research and development process, as well as its high standards for manufacturing that exceed basic compliance needs.

9.      Alcon is also a strong advocate for eye health.  In 2017 alone, Alcon supported 554 charitable medical missions through Alcon Cares, Inc., a U.S. foundation, serving more than 392,000 patients around the world and facilitating approximately 34,000 surgeries.  Alcon also offers grants through the Alcon Foundation, Inc. to advance and improve the quality of eye health, education, and access to care, and it has partnered for over 30 years with Orbis, an international charity that fights blindness, to enhance access to eye care services in the developing world through hands-on training and capacity building.  Alcon also operates www.myeyes.com, an online resource for vision care for patients that allows them to explore how the eye works and actively manage their ocular health.

10.      Alcon is a leading producer of soft contact lenses in the U.S.  It sells contact lenses under several different brands, including DAILIES®, which are its daily disposable soft contact lenses.  U.S. consumers of Alcon products have come to expect a high level of quality from Alcon, due in large part to the regimented and precise manner in which the products are manufactured, packaged, distributed, and marketed.

11.      Alcon has invested significant resources into conducting clinical trials of and obtaining FDA approval for each of its contact lens products.  It has also spent over 70 years and millions of dollars in advertising creating consumer recognition and confidence in its brands, which relies in large part on recognition of, and confidence in, products bearing Alcon brand names.  These substantial expenditures of time, money, and effort have resulted in a reputation for exceptionally high quality products, including contact lenses.  For example, Alcon's DAILIES TOTAL1® lenses won the "Contact Lens Product of the Year" award at the U.K.'s 2014 Optician Awards.  Its CLEAR CARE® PLUS with HYDRAGLYDE® contact lens solution was awarded

Product of the Year in the Eye Care category of the 2016 Consumer Survey of Product Innovation.

12.     Alcon vigorously protects its reputation and goodwill by maintaining the highest standards in products, appearance, and customer service.

**B.      Background on Contact Lenses**

13.     Today, nearly 40 million Americans wear contact lenses to correct refractive vision defects.  Contact lenses are medical devices regulated by the U.S. Food and Drug Administration to ensure their safety and efficacy.  According to their labeling, contact lenses require professional care, and thus patients can only obtain them with a valid prescription.

14.     In the United States, about 90 percent of contact lens wearers wear soft contact lenses, which are generally made of soft, flexible, water absorbing plastics or silicone-hydrogel material that allow higher amounts of oxygen to pass through to the cornea.  Most soft contact lenses are replaced daily, weekly, or monthly.

15.     Each contact lens manufacturer uses unique manufacturing processes and most often unique materials to produce its contact lenses.  The manufacturing process and material affect how contact lenses fit, how they correct vision, and the level of comfort they provide. Moreover, different contact lens brands vary on such features as base curve (the back curvature of the contact lens, measured in millimeters), diameter (the distance across a lens between one edge of the contact lens to the other edge), material (chemical make-up of the plastic), lens shape (type of curvatures on the front and back surfaces of the lens), flexure (flexibility of the lens on the eye), oxygen transmissibility (amount of oxygen that passes through the lens), water content (percentage of water/solution absorbed by the lens material), surface wettability (ease with which tears adhere to the lens surface), center thickness (thickness at the center of the lens), edge

4

thickness (thickness at edge of the lens), edge design (shape of the lens edge), surface characteristics/treatments, UV blocking, and interaction with lens care solutions.

16.　　Different combinations of these features affect the fit, efficacy, and safety of patients' contact lenses.  Thus, the professional judgment of an eye care practitioner, such as an optometrist or ophthalmologist, is required to select the appropriate pair of contact lens for each patient.  In particular, soft contact lenses should cover the cornea adequately and center properly, while also being able to move enough to flush cellular and tear debris from behind the lenses; remain stable on the eye; transmit oxygen; and optically correct vision.

**C.　　Federal Regulation of Contact Lens Sellers**

17.　　The Fairness to Contact Lens Consumers Act ("FCLCA"), 15 U.S.C. §§ 7601-7619, and its implementing regulation, the Contact Lens Rule ("CLR"), 16 C.F.R. § 315, set forth specific requirements for third-party sellers of contact lenses.  Under the statute, a contact lens seller may only sell contact lenses to a patient with a valid prescription.  Among other things, the statute requires contact lens sellers to verify contact lens prescriptions with patients' prescribers and prohibits contact lens sellers from altering contact lens prescriptions.  As explained above, the prescription must include the power, the material or manufacturer or both, the base curve or appropriate designation, and the diameter of the lenses, as well as the expiration date of the prescription.

18.　　To obtain contact lenses from a third-party seller, a patient must either present her contact lens prescription to the seller or the seller must verify the prescription with the prescriber. For the latter option, the seller must provide certain information about the prescription to the patient's prescriber, including the contact lens power, manufacturer, base curve or appropriate designation, and diameter.  The prescription is considered verified under the FCLCA if either (1) the prescriber directly confirms that the prescription is accurate to the seller or (2) the prescriber

fails to communicate with the seller within 8 business hours after receiving the required information ("passive verification"). If the prescriber informs the seller that the prescription is inaccurate, expired, or otherwise invalid, the seller cannot fill it.

19.     The U.S. Food and Drug Administration regulates daily wear (lenses that are removed each night) contact lenses as Class II (moderate to high risk) medical devices and extended wear (lenses that are worn for periods of 6 nights up to 30 nights) as Class III (high risk). In its "Focusing on Contact Lens Safety" Consumer Update, it includes the following information regarding prescriptions:

> With a valid prescription, it is possible to purchase contact lenses from pharmacies, optical retailers, and online optical retailers. But be extremely cautious when buying contacts from someone other than your eye care professional.
>
> Contact lenses are NOT over-the-counter (OTC) devices. Companies that sell them as such are misbranding the device and violating FTC regulations by selling contact lenses without having your prescription.

https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm048893.htm.

20.     It provides the following additional important safety information for consumers who may have their prescriptions filled by third parties:

> Make sure that you get the exact brand, lens name, power, sphere, cylinder (if any), axis (if any), diameter, base curve, and peripheral curves (if any) noted on the prescription. If you think you've received an incorrect lens or brand, check with your eye care professional. (The correct brand is important because there are differences in the water content and shape among the brands.) Don't accept any substitution unless your eye care professional approves it.

*Id.*

**D.** **Alcon's DAILIES AQUACOMFORT PLUS®, O2 OPTIX®, and FRESHLOOK® COLORBLENDS® Contact Lenses**

21. Beginning in May 2017, Alcon introduced new product packaging for its DAILIES AQUACOMFORT PLUS® sphere contact lenses distributed in the United States, a product that is often prescribed to patients who have not previously worn soft contact lenses.

| Front of Packaging | Back of Packaging |
|:---:|:---:|
|  |  |

22.     The new product packaging includes several new patient-friendly educational elements, including (i) readily accessible detailed insertion and removal instructions, (ii) a toll-free patient helpline and email address to permit patients to contact Alcon directly with questions, and (iii) a dedicated DAILIES® website address for more at-home and online support.



8

23.     To enhance its ability to communicate with eye care practitioners and patients regarding issues that might affect the safety or efficacy of its products, Alcon also added U.S.-specific lot numbers to this packaging.  These lot numbers can be used by Alcon to track its products through its supply chain in the event that Alcon needs to notify eye care practitioners or patients regarding any issues related to the safety or efficacy of the lenses, including, for example, any inaccuracies in the corrective power of the lenses.



24.    Alcon also updated the design of the front panel of the packaging, including the addition of its LIGHTSTREAM® technology trademark.



25.    Finally, so that U.S. patients and eye care practitioners can readily confirm that they are receiving the benefits of the new product packaging, Alcon added an American flag to the packaging.



ny-1311243

26.     Alcon first announced the new packaging to the eye care industry in a media alert issued on November 12, 2016, and sent additional follow-up communications regarding the packaging change to customers, authorized distributors, retailers, and eye care practitioners starting in spring 2017.  Alcon did not limit these communications to entities with whom it had a direct relationship because it wanted everyone who sold DAILIES AQUACOMFORT PLUS® lenses to have advance notice of the packaging change so that they would have adequate time to update their inventory with the new products.

27.     Beginning in May 2017, Alcon began to provide DAILIES AQUACOMFORT PLUS® lenses with the updated packaging directly to larger customers, such as Walmart and Costco, to authorized distributors, and to retailers with whom it has reseller agreements.  To prevent confusion that could result if two different versions of the DAILIES AQUACOMFORT PLUS® lens packaging were available in the marketplace at the same time, and to make sure that all patients would receive the benefits of the additional information on the new packaging, Alcon required all customers, authorized distributors, and retailers with whom it had a contract to stop selling any DAILIES AQUACOMFORT PLUS® products in the prior packaging by June 16, 2017.  They could then exchange any remaining products in their inventory for products in the new DAILIES AQUACOMFORT PLUS® packaging.  Alcon's sales representatives worked directly with eye care practitioners to assist in exchanging any older product in their inventories for products with the updated packaging.

28.     Alcon also provided customers, authorized distributors, retailers with whom it had contracts, and eye care practitioners with photographs (i.e., box shots) and other marketing materials featuring the new packaging for the DAILIES AQUACOMFORT PLUS® products and asked that they update their marketing materials.  These marketing materials were made available to Alcon's partners through its marketing portal website at www.alconODmarketing.com.

11

ny-1311243

29.     During July 2017, Alcon also sent letters to retailers with whom it did not have a relationship reminding them of the packaging change and informing them that the older DAILIES AQUACOMFORT PLUS® product packaging was not authorized for sale in the United States after June 16, 2017.

30.     To assure compliance with its requirement that products in the prior packaging be exchanged for products in the new packaging, Alcon carefully monitored the return process for DAILIES AQUACOMFORT PLUS® products, and, during July 2017, sent letters to customers, authorized distributors, retailers under contract, and eye care practitioners whom it believed had not returned their inventory of DAILIES AQUACOMFORT PLUS® products in the prior packaging.  On information and belief, substantially all of the prior DAILIES AQUACOMFORT PLUS® products were exchanged by Alcon's customers, authorized distributors, retailers under contract, and eye care practitioners by July 31, 2017, but not quite all.  Accordingly, Alcon sent a further communication to all customers, retailers with whom it had contracts, and eye care practitioners reminding them of the importance of exchanging products in the prior packaging in their inventory for products with the updated packaging.  Alcon also informed them that continued sales of DAILIES AQUACOMFORT PLUS® products with the older packaging would likely confuse patients and would be considered trademark infringement in the United States.

31.     Further, Alcon regularly reviewed the websites of its customers, authorized distributors, retailers under contract, and eye care practitioners to assure that they had removed any depictions of the older DAILIES AQUACOMFORT PLUS® products.  To the extent that they had not, Alcon contacted them during the summer of 2017 to remind them of the packaging change and to reiterate that the marketing materials and websites needed to be updated to show only the DAILIES AQUACOMFORT PLUS® products with the updated packaging.

32.     Another contact lens product that Alcon manufactures is the O2 OPTIX® product. In an effort to streamline its product line, Alcon discontinued providing complimentary "fit sets" for the O2 OPTIX® lenses to eye care practitioners in the United States for use in fitting patients with O2 OPTIX® contact lenses in 2011.  Because eye care practitioners do not normally prescribe contact lenses without first doing a fitting with a complimentary fit set, Alcon stopped distributing the O2 OPTIX® products in the United States about two years later, in 2013.  Alcon now distributes the O2 OPTIX® products only in certain countries outside of the United States.

33.     Alcon also offers colored contact lenses that allow patients to change the appearance or color of their eyes.  It markets some of these products under the FRESHLOOK® COLORBLENDS® trademarks.  Although some of the FRESHLOOK® COLORBLENDS® lenses do not correct vision, all are subject to the Alcon fitting guidelines and the FCLCA and need to be prescribed by a licensed eye care practitioner.  Alcon markets these products in the United States in boxes that contain six lenses each.  Because of the different market conditions outside of the United States, it markets these products in 2-packs only outside of the United States.

34.     Over the years, a market has developed for counterfeit contact lenses, including in the United States, particularly for non-corrective colored contact lenses.  Alcon regularly works with U.S. Customs and law enforcement to seize counterfeits of its FRESHLOOK® COLORBLENDS® products.  Many of the counterfeit products come in packaging that looks much like genuine packaging and these counterfeits are regularly sold in the 2-pack size.  Further, some feature colors that are not true to the colors in genuine FRESHLOOK® COLORBLENDS® products.

**E.      Alcon's Intellectual Property Rights**

35.     Alcon has taken all appropriate steps to protect its rights in the trademarks and trade dress used for its DAILIES AQUACOMFORT PLUS® products, O2 OPTIX® products, and

ny-1311243

FRESHLOOK® COLORBLENDS® products.  Specifically, Alcon owns the registrations and applications set forth below for its ALCON® mark (collectively, the "ALCON Marks").

36.     Alcon owns U.S. Trademark Registration No. 1,055,870 for the mark ALCON® for "cleaning, wetting, and soaking solutions for contact lenses," which issued on January 11, 1977.  Alcon filed an affidavit under Section 15 of the Lanham Act on July 30, 1982, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

37.     Alcon owns U.S. Trademark Registration No. 3,964,835 for the stylized ALCON® mark shown below for "cleaning, wetting, and soaking solutions for contact lenses," which issued on May 24, 2011.  Alcon filed an affidavit under Section 15 of the Lanham Act on October 26, 2016, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the stylized ALCON® trademark for the registered goods.



38.     Alcon owns U.S. Trademark Registration No. 4,560,685 for the mark ALCON® for "contact lenses," which issued on July 1, 2014.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the ALCON® trademark for the registered goods.

ny-1311243

39.     Alcon also owns U.S. Application Serial No. 87/543,031 for the stylized ALCON mark shown below for "contact lenses." This application was filed on July 26, 2017, and claims a first use anywhere and first use in commerce date of December 31, 2013. The mark was published for opposition on December 12, 2017. Alcon expects that the registration for the mark will issue by approximately March 2018.



40.     Alcon also owns four copyrights in the DAILIES AQUACOMFORT PLUS® packaging visual artwork, and has filed applications to register the copyrights. These include Copyright Case Nos. 1-5682214719, 1-5682214531, 1-5496799089, and 1-5496798601.

41.     Alcon's parent, Novartis AG, owns the registrations and application below for marks that are used on Alcon's DAILIES AQUACOMFORT PLUS® products (collectively, the "ALCON DACP Marks").

42.     Novartis owns U.S. Trademark Registration No. 5,137,710, for the mark AQUACOMFORT PLUS® for "contact lenses," which issued on February 7, 2017. The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the AQUACOMFORT PLUS® trademark for the registered goods.

43.     Novartis also owns U.S. Registration No. 4,556,224, for the Teardrop Logo shown below for "contact lenses," which issued on June 24, 2014. The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Alcon's exclusive right to use the Teardrop Logo for the registered goods.

ny-1311243



44.     Novartis also owns U.S. Trademark Registration No. 3,687,534, for the mark AQUACOMFORT® for "contact lenses," which issued on September 22, 2009.  Novartis filed an affidavit under Section 15 of the Lanham Act on September 9, 2015, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the AQUACOMFORT® trademark for the registered goods.

45.     Novartis also owns U.S. Trademark Registration No. 2,924,933, for the mark LIGHTSTREAM® for "contact lenses and optical lenses," which issued on February 8, 2005. Novartis filed an affidavit under Section 15 of the Lanham Act on December 27, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the LIGHTSTREAM® trademark for the registered goods.

46.     Novartis also owns U.S. Registration No. 3,555,421 for the mark DAILIES AQUACOMFORT PLUS® for "contact lenses," which issued on December 30, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on October 24, 2014, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the DAILIES AQUACOMFORT PLUS® trademark for the registered goods.

ny-1311243

47. Novartis also owns U.S. Application Serial No. 87/586,440 for the trade dress for the front panel of the DAILIES AQUACOMFORT PLUS® products shown below for "contact lenses." This application was filed on August 28, 2017, and claims a first use anywhere and first use in commerce date of May 31, 2017. This application has been examined and the only issue that was raised is a requirement for a slight modification to the description of the trade dress. Once Alcon responds to that office action, the mark will be approved for publication.



48. Novartis also owns the registrations below for marks that are used on Alcon's O2 OPTIX® products (collectively, the "O2 OPTIX Marks").

49. Novartis owns U.S. Registration No. 2,946,628 for the mark O2® for "contact lenses," which was issued on May 3, 2005. Novartis filed an affidavit under Section 15 of the Lanham Act on February 19, 2001, which was acknowledged by the United States Patent and Trademark Office. As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the O2® trademark for the registered goods.

50. Novartis owns U.S. Registration No. 3,308,130 for the mark O2 OPTIX® for "contact lenses," which issued on October 9, 2007. Novartis filed an affidavit under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the United States Patent

ny-1311243

and Trademark Office.  As a result, the registration is incontestable and considered to be

conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right

to use the O2 OPTIX® trademark for the registered goods.

51.     Novartis owns U.S. Registration No. 3,308,131 for the stylized O2 OPTIX® mark

shown below for "contact lenses," which issued on October 9, 2007.  Novartis filed an affidavit

under Section 15 of the Lanham Act on December 31, 2016, which was acknowledged by the

United States Patent and Trademark Office.  As a result, the registration is incontestable and

considered to be conclusive evidence of the validity of the mark and registration, and of Novartis'

exclusive right to use the stylized O2 OPTIX® trademark for the registered goods.



52.     Novartis also owns the registrations below for marks that are used on Alcon's

FRESHLOOK® COLORBLENDS® products (collectively, the "FRESHLOOK COLORBLENDS

Marks").

53.     Novartis owns U.S. Registration No. 2,888,957 for the mark FRESHLOOK® for

"contact lenses," which issued on September 28, 2004.  Novartis filed an affidavit under

Section 15 of the Lanham Act on October 6, 2014, which was acknowledged by the United States

Patent and Trademark Office.  As a result, the registration is incontestable and considered to be

conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right

to use the FRESHLOOK® trademark for the registered goods.

54.     Novartis owns U.S. Registration No. 2,251,945 for the mark FRESHLOOK

COLOR BLENDS® for "contact lenses," which issued on June 8, 1999.  Novartis filed an

affidavit under Section 15 of the Lanham Act on June 26, 2009, which was acknowledged by the

ny-1311243

United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the FRESHLOOK COLOR BLENDS® trademark for the registered goods.

55.    Novartis owns U.S. Registration No. 2,340,808 for the mark COLORBLENDS® for "contact lenses," which issued on April 11, 2000.  Novartis filed an affidavit under Section 15 of the Lanham Act on June 9, 2010, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the COLORBLENDS® trademark for the registered goods.

56.    Novartis also owns U.S. Registration No. 3,429,280 for the CIBA VISION® mark for "contact lenses," which issued on May 20, 2008.  Novartis filed an affidavit under Section 15 of the Lanham Act on November 7, 2017, which was acknowledged by the United States Patent and Trademark Office.  As a result, the registration is incontestable and considered to be conclusive evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the CIBA VISION® trademark for the registered goods.  The CIBA VISION® mark is used on the packaging for the FRESHLOOK® COLORBLENDS® and O2 OPTIX® lenses.

57.    Novartis also owns U.S. Registration No. 4,425,860 for the stylized CIBA VISION® mark shown below for "contact lenses," which issued on October 29, 2013.  The registration is considered to be prima facie evidence of the validity of the mark and registration, and of Novartis' exclusive right to use the stylized CIBA VISION® trademark for the registered goods.  The stylized CIBA VISION® mark is also used on the packaging for the FRESHLOOK® COLORBLENDS® and O2 OPTIX® lenses.

19



58.     As a result of Alcon's expenditures and efforts, the ALCON Marks, the ALCON

DACP Marks, the O2 OPTIX Marks, the FRESHLOOK COLORBLENDS Marks, the CIBA

VISION mark, and the stylized CIBA VISION mark (collectively, "the ALCON Contact Lens

Marks") have come to signify the high quality of Alcon's contact lens products.  They have

incalculable reputation and goodwill, belonging exclusively to Alcon and its parent, Novartis AG.

**F.      Defendants' Business and Wrongful Conduct**

59.     Beginning on August 1, 2017, Alcon conducted test buys to assure that only

products in updated DAILIES AQUACOMFORT PLUS® packaging were being sold in the

United States.  It bought products from a variety of online sources, including retailers who had

contracts with Alcon and retailers who were not under contract with Alcon.  While the majority of

the retailers shipped DAILIES AQUACOMFORT PLUS® products in the updated and authorized

packaging, a handful of them did not, including saveonlens.com, contactfill.com,

contactlens.com, and five websites operated by LD Vision.  On information and belief, each of

those retailers had Defendant AVG fulfill the orders, and AVG shipped DAILIES

AQUACOMFORT PLUS® products in packaging that is not authorized for sale in the United

States.

60.     On information and belief, Defendants jointly operate a website at national-

lens.com, where they offer contact lenses to eye care practitioners.  The national-lens.com

website features a large image of Alcon's FRESHLOOK® COLORBLENDS® 6-pack product,

ny-1311243

but Defendants do not sell that product.  Instead, Defendants sell a FRESHLOOK®

COLORBLENDS® 2-pack product.

61.     Also on the national-lens.com website, Defendants advertise that the

FRESHLOOK® COLORBLENDS® product is "Now Available in 2 Packs," as shown below,

when Alcon does not distribute FRESHLOOK® COLORBLENDS® 2-pack products in the

United States.  By advertising that FRESHLOOK® COLORBLENDS® products are "now

available" in 2-packs, Defendants are leading customers to believe that such lenses are approved

for sale in the United States, when they are not.



62.     Based upon Alcon's test buys, Alcon has determined that AVG has filled multiple

contact lens orders sent to purchasers in New York, including shipments of DAILIES

AQUACOMFORT PLUS® products in the prior packaging, and continues to ship such products

to New York.  For example, AVG fulfilled a New York order placed with saveonlens.com as

recently as December 29, 2017 and shipped DAILIES AQUACOMFORT PLUS® products in the

prior packaging.

63.     On information and belief, Defendants act as distributors and ship contact lenses directly to retailers who then sell the products to patients.  On information and belief, when Defendants ship DAILIES AQUACOMFORT PLUS® products to retailers, including those in New York, they ship DAILIES AQUACOMFORT PLUS® products in the prior packaging that is not authorized for sale in the United States.

64.     The packaging for the DAILIES AQUACOMFORT PLUS® products that Defendants are selling in the United States is materially different from the packaging for products that Alcon has authorized for sale in the United States and that are being sold by distributors and resellers who exchanged their older product inventory for products with the updated packaging in 2017.  Specifically, they lack (i) U.S.-specific lot numbers, (ii) readily accessible detailed insertion and removal instructions, (iii) a toll-free patient helpline and email address to permit patients to more easily contact Alcon directly with questions, (iv) a dedicated DAILIES® website address for more at-home and online support, and (v) the American flag.  Additionally, the packaging for the DAILIES AQUACOMFORT PLUS® products sold by Defendants retains content that Alcon no longer features on its U.S.-specific DAILIES AQUACOMFORT PLUS® sphere product, including text in languages other than English and Spanish, as well as Japanese regulatory text and a registration number.  Both the front and back of the packaging differ from the authorized DAILIES AQUACOMFORT PLUS® packaging, as shown below.

| Alcon Packaging | Packaging used by AVG |
|:---:|:---:|
|  |  |
|  |  |

65.    Another material difference with the DAILIES AQUACOMFORT PLUS® lenses

that Alcon distributes in the United States is the lack of prescription verification in connection

with at least some shipments of DAILIES AQUACOMFORT PLUS® lenses by AVG.  Proper

verification requires either that the patient present a copy of the prescription to the contact lens

seller or that the contact lens seller contacts the eye care practitioner to verify the prescription

information.  Alcon has confirmed through numerous test buys that AVG fulfills some contact

lens orders for patients whose prescriptions have not been verified.

66.    This lack of prescription verification in connection with some of AVG's shipments

runs counter to the FCLCA and CLR's current requirements, raising health and safety concerns

for consumers due to the risks associated with wearing non-prescribed contact lenses, as described above.

67.    Defendants' sale of products in packaging that is materially different from the DAILIES AQUACOMFORT PLUS® packaging that Alcon distributes in the United States causes consumers to be confused, or to believe that the packaging sold by Defendants is the same as the DAILIES AQUACOMFORT PLUS® product packaging sold by Alcon in the United States, when they are not.  As such, Defendants' sales of DAILIES AQUACOMFORT PLUS® products in prior packaging violate Sections 32 and 43(a) of the Lanham Act.

68.    Defendants' sale of improperly packaged DAILIES AQUACOMFORT PLUS® products also deprives contact lens patients in the United States of important safety and usage information that Alcon includes on the packaging that it uses for the DAILIES AQUACOMFORT PLUS® products that are distributed in the United States.  It also deprives Alcon of the ability to rely on its U.S.-specific lot number system to notify U.S. eye care practitioners and patients in the event that there is an issue with any of its DAILIES AQUACOMFORT PLUS® products.  Each of these consequences, among others, negatively impacts the safety and well-being of contact lens consumers and harms Alcon's reputation and goodwill.

69.    In addition to selling DAILIES AQUACOMFORT PLUS® products with the older packaging, Defendants are selling two other products that Alcon does not distribute in the United States.  First, according to the national-lens.com website, which is jointly operated by AVG and National Lens, Defendants are selling O2 OPTIX® lenses even though Alcon stopped selling those products in the United States in 2013 and no longer supports those products in the United States.  Second, and also according to the national-lens.com website, Defendants are selling

FRESHLOOK® COLORBLENDS® contact lenses in a 2-pack size that Alcon does not distribute for sale in the United States and that are sometimes the subject of counterfeiting.

70. Defendants' sale of products that are materially different from the FRESHLOOK® COLORBLENDS® products that Alcon sells in the United States will cause consumers to be confused, or to believe that the products sold by Defendants are the same as the FRESHLOOK® COLORBLENDS® products sold by Alcon in the United States, when they are not. Further, their sales of unsupported O2 OPTIX® products in the United States will cause consumers to be confused, or to believe that the products sold by Defendants continue to be supported by Alcon in the U.S. market when they are not. As such, Defendants' sales of FRESHLOOK® COLORBLENDS® 2-packs and O2 OPTIX® products in the United States violate Sections 32 and 43(a) of the Lanham Act.

71. By selling or distributing O2 OPTIX® and 2-pack FRESHLOOK® COLORBLENDS® products in the United States, a market in which Alcon does not offer the products, Defendants have removed the necessary transparency of the market. If a recall or other notification to retailers, eye care practitioners, or patients were required, it would be more difficult for Alcon to effectively communicate the recall to all necessary parties. Accordingly, Defendants' misconduct puts consumers at risk and jeopardizes Alcon's reputation and goodwill.

72. If Defendants continue their wrongful conduct, Alcon will be irreparably harmed, including through loss of goodwill, reputation, and the ability to monitor the supply chain for Alcon products being sold in the United States, which could interfere with Alcon's ability to communicate with eye care practitioners or patients regarding their Alcon lenses and to keep counterfeit products out of the United States. Patients will also face irreparable harm if they are receiving contact lenses for which they do not have prescriptions, or if they are skipping regular eye care appointments from an eye care practitioner because they are able to fill expired

ny-1311243

prescriptions through resellers working with Defendants.  Such irreparable harm will continue

unless Defendants are restrained from their continuing violation of the Lanham Act.  Alcon has

no adequate remedy at law.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Trademark Infringement Under 15 U.S.C. § 1114**

73.　　Alcon repeats and realleges each allegation set forth in paragraphs 1 through 72

above as if fully set forth herein.

74.　　The acts of Defendants described above constitute trademark infringement in

violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

75.　　Alcon and its parent Novartis have valid and protectable rights in each of the

registered ALCON Contact Lens Marks.  These rights predate Defendants' sale of DAILIES

AQUACOMFORT PLUS® products that are materially different from the DAILIES

AQUACOMFORT PLUS® products that Alcon has distributed in the United States since at least

as early as May 2017, as well as Defendants' sales of the discontinued O2 OPTIX® products and

Defendants' sales of the FRESHLOOK® COLORBLENDS® 2-packs in the United States.

76.　　On information and belief, Defendants had actual knowledge of Alcon's

ownership and use of the ALCON Marks prior to May 2017, of the change to the DAILIES

AQUACOMFORT PLUS® packaging that would take place in May 2017, and of the fact that

Alcon does not authorize O2 OPTIX® and FRESHLOOK® COLORBLENDS® 2-pack sales in the

United States.

77.　　Alcon has not authorized Defendants to use any of the ALCON Contact Lens

Marks in connection with the sale of any Alcon contact lens products.

78.　　Defendants' unauthorized use of the registered ALCON Contact Lens Marks as

alleged above is likely to cause confusion, mistake, or deception on the part of consumers as to

26

ny-1311243

the source, nature, and quality of the goods Defendants are offering under the registered ALCON

Contact Lens Marks, constituting trademark infringement in violation of 15 U.S.C. § 1114.

79.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been,

is now, and will continue to be irreparably injured and damaged by Defendants' aforementioned

acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate

remedy at law.

80.     On information and belief, Defendants have acted willfully to usurp Alcon's

rights, and they should be held liable to Alcon for treble damages and attorneys' fees pursuant to

15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**
**False Designation of Origin Under 15 U.S.C. § 1125(a)**

81.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 80

above as if fully set forth herein.

82.     The acts of Defendants described above constitute unfair competition and false

designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83.     Alcon has valid and protectable rights in the ALCON Contact Lens Marks.  These

rights predate Defendants' sales of DAILIES AQUACOMFORT PLUS® products that are

materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon has

distributed in the United States since at least as early as May 2017, as well as Defendants' sales of

the discontinued O2 OPTIX® products and Defendants' sales of the FRESHLOOK®

COLORBLENDS® 2-packs in the United States.

84.     On information and belief, Defendants had actual knowledge of Alcon's and

Novartis's ownership and use of the ALCON Marks and the ALCON DAILIES

27

AQUACOMFORT PLUS® Marks prior to May 2017, and of the change to the DAILIES

AQUACOMFORT PLUS® packaging that would take place in May 2017.

85.     On information and belief, Defendants also had actual knowledge of Alcon's and

Novartis's ownership and use of the O2 OPTIX® Marks, the CIBA VISION® mark, and the

stylized CIBA VISION® mark prior to when Alcon discontinued selling those products in the

United States, in approximately 2013.

86.     On information and belief, Defendants also had actual knowledge of Alcon's and

Novartis's ownership and use of the FRESHLOOK® COLORBLENDS® Marks, the CIBA

VISION® mark, and the stylized CIBA VISION® mark prior to when they first sold the

FRESHLOOK® COLORBLENDS® 2-packs in the United States.

87.     Defendants' unauthorized use of the ALCON Contact Lens Marks as alleged

above is likely to cause consumers to believe that there is a relationship between Defendants and

Alcon and/or that Defendants' products come from Alcon.  Such association constitutes false

designation of origin, in violation of 15 U.S.C. § 1125(a).

88.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been,

is now, and will continue to be irreparably injured and damaged by Defendants' aforementioned

acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate

remedy at law.

89.     On information and belief, Defendants have acted willfully to usurp Alcon's

rights, with full knowledge of and intent to cause harm to Alcon, and Defendants should be held

liable to Alcon for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

ny-1311243

**THIRD CLAIM FOR RELIEF**
**Deceptive Trade Practices Under New York General Business Law § 349**

90.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 89 above as if fully set forth herein.

91.     The acts of Defendants described above constitute consumer-oriented deceptive trade practices under New York General Business Law § 349.

92.     Defendants' sale of DAILIES AQUACOMFORT PLUS® products in packaging that is materially different from the DAILIES AQUACOMFORT PLUS® product packaging that Alcon has distributed in the United States since at least as early as May 2017 has caused and will continue to cause specific and direct harm to consumers in New York and to the public interest. The sale or distribution of DAILIES AQUACOMFORT PLUS® lenses in the old packaging without U.S.-specific lot numbers, readily accessible detailed use instructions, a toll-free patient helpline and email address, a dedicated DAILIES® support website address, and the identifying American flag, harms consumers and impacts public safety by, among other things, reducing consumers' ability to access important safety and use information and impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

93.     Defendants' sale of O2 OPTIX® products that Alcon no longer distributes or supports in the United States has caused and will continue to cause specific and direct harm to consumers in New York and to the public interest.  Because Defendants are improperly selling or distributing O2 OPTIX® lenses in the United States, outside of Alcon's transparent distribution market, Defendants are harming consumers by impeding Alcon's ability to effectively communicate with consumers, eye care practitioners, and retailers in the event of a recall or other notification.

94.     Defendants' sale of FRESHLOOK® COLORBLENDS® 2-pack products that are materially different from the FRESHLOOK® COLORBLENDS® products that Alcon distributes

ny-1311243

in the United States has caused and will continue to cause specific and direct harm to consumers in New York and to the public interest.

95.     Because Defendants are improperly selling or distributing FRESHLOOK® COLORBLENDS® 2-pack lenses in the United States, outside of Alcon's transparent distribution market, Defendants are harming consumers by impeding Alcon's ability to effectively communicate with consumers, eye care practitioners, and retailers in the event of a recall or other notification.

96.     Lack of prescription verification in connection with some of AVG's shipments is a violation of the FCLCA and a consumer-oriented deceptive trade practice that has caused and will continue to cause specific and direct harm to consumers in New York and to the public interest.

97.     As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alco has no adequate remedy at law.

98.     On information and belief, Defendants have acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

### FOURTH CLAIM FOR RELIEF
### False Advertising Under New York General Business Law § 350

99.     Alcon repeats and realleges each allegation set forth in paragraphs 1 through 98 above as if fully set forth herein.

100.     The acts of Defendants described above constitute false advertising under New York General Business Law § 350.

101.     Defendants' unauthorized use of the ALCON Contact Lens Marks as alleged above is likely to cause consumers to believe that there is a relationship between Defendants and

30

Alcon and/or that Defendants' products come from Alcon.  Such association constitutes false advertising under New York General Business Law § 350.

102.    National Lens's advertisement of FRESHLOOK® COLORBLENDS® 6-pack products that it does not sell, and its advertisement of other Alcon products that are not distributed by Alcon in the United States deceives consumers into believing that such lenses are approved for sale in the United States.  Such materially misleading advertising is harmful to consumers as it leads them to believe the products they are purchasing are genuine, when instead National Lens is impairing Alcon's quality control, consumer communication, and supply chain monitoring measures.

103.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate remedy at law.

104.    On information and belief, Defendants have acted willfully to usurp Alcon's rights, with full knowledge of and intent to cause harm to Alcon.

### FIFTH CLAIM FOR RELIEF
**Trademark Infringement Under New York Common Law**

105.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 104 above as if fully set forth herein.

106.    The acts of Defendants described above constitute trademark infringement under the common law of the State of New York.

107.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been, is now, and will continue to be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name,

31

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate

remedy at law.

## SIXTH CLAIM FOR RELIEF
### Unfair Competition Under New York Common Law

108.    Alcon repeats and realleges each allegation set forth in paragraphs 1 through 107

above as if fully set forth herein.

109.    The acts of Defendants described above constitute unfair competition under the

common law of the State of New York.

110.    As a direct and proximate result of Defendants' wrongful conduct, Alcon has been,

is now, and will continue to be irreparably injured and damaged by Defendants' aforementioned

acts, and unless Defendants are enjoined by the Court, Alcon will suffer further harm to its name,

reputation, and goodwill.  This harm constitutes an injury for which Alcon has no adequate

remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Alcon prays for judgment as follows:

1.    That judgment be entered in favor of Alcon and against Defendants on each and

every Claim of this Complaint;

2.    For entry of an order and judgment requiring that Defendants and their respective

officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or

corporations in active concert or participation with them, be enjoined during the pendency of this

action and permanently thereafter from (a) using in any manner the ALCON Contact Lens Marks

in connection with the sale of any product that is materially different from products that Alcon

distributes in the United States, including but not limited to using the ALCON Contact Lens

Marks in connection with the sale of any Alcon product for which the prescription has not been

properly verified; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or prospective customers as to the source of the products offered or distributed by Defendants, or likely to confuse members of the public, or prospective customers, into believing that there is some connection between Alcon and Defendants or any other entity owned by or associated with Defendants; (c) otherwise competing unfairly with Alcon in any manner; or (d) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in parts (a) through (c) of this paragraph 2;

3.      For entry of an order and judgment directing Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Alcon within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and ceased selling Alcon products that are materially different from products that Alcon distributes in the United States, including but not limited to the sale of products bearing any of the ALCON Contact Lens Marks for which the prescription has not been properly verified, O2 OPTIX® products, DAILIES AQUACOMFORT PLUS® products that are materially different from the DAILIES AQUACOMFORT PLUS® products that Alcon distributes in the United States, and FRESHLOOK® COLORBLENDS® products that are materially different from the FRESHLOOK® COLORBLENDS® products that Alcon distributes in the United States;

4.      For entry of an order and judgment directing Defendants to disclose to Alcon all of Defendants' suppliers of Alcon products;

5.      For a judgment in the aggregate amount of (a) Defendants' profits, (b) Alcon's actual damages, (c) the costs of this action pursuant to 15 U.S.C. § 1117, and (d) restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have

ny-1311243

been obtained by Defendants as a result of their unlawful, unfair, and/or fraudulent business acts or practices;

6.    That the Court award enhanced damages pursuant to 15 U.S.C. § 1117(a);

7.    That the Court award prejudgment interest on all amounts awarded;

8.    That the Court award Alcon reasonable attorneys' fees; and

9.    That the Court award such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alcon hereby demands trial by jury on all issues raised by the Complaint.


Dated:  New York, New York
         January 19, 2018

MORRISON & FOERSTER LLP

By: /s/ Jamie A. Levitt
    Jamie A. Levitt
    250 West 55th Street
    New York, New York  10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Email:  JLevitt@mofo.com

    Jennifer Lee Taylor (*Pro Hac Vice* application forthcoming)
    Joyce Liou (*Pro Hac Vice* application forthcoming)
    425 Market Street
    San Francisco, California  94105
    Telephone:  (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JTaylor@mofo.com
          JLiou@mofo.com

    Attorneys for Plaintiff
    ALCON LABORATORIES, INC.